UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 13-136-HRW

EUGENE ADKINS, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

MARIO PALERMO, DEFENDANT.

This matter is before the Court upon Defendant Mario Palermo's Motion for Summary Judgment [Docket No. 12]. The motion has been fully briefed by the parties [Docket Nos. 15 and 17]. For the reasons set forth below, the Court finds that Defendant Mario Palermo is entitled to judgment as a matter of law.

I. BACKGROUND

This legal malpractice action arises from a personal injury lawsuit in which the Plaintiff in this case, Eugene Adkins, was represented by Defendant Mario Palermo. Plaintiff sued A.K. Steel for injuries he received while working at A.K.'s plant in Ashland, Kentucky during the course of his employment with Relco Locomotives ("Relco). The following facts are of record in that lawsuit: Relco was under contract to A.K. to supply quench locomotives to its Ashland plant. Pursuant to the contract, A.K. was responsible for keeping coal dust off the locomotives, which was both a safety hazard for those working on or around the locomotives and presented additional maintenance challenges to the electronics of the locomotives. Relco was in turn responsible for direct maintenance of the locomotive equipment. The agreement also provided that RELCO was responsible for any lost production time if its locomotives became inoperable during the leased period. The conditions of the plant were such that locomotives would run only

three or four days before they became inoperable, if not properly maintained. Thus, the economic loss for inoperable equipment and lost production time fell squarely on Relco.

Plaintiff was one of the Relco employees responsible for keeping its locomotives running. While working on maintenance, he slipped on coal dust and fell, sustaining significant injuries and some permanent disability.
He hired Defendant Palermo to pursue a worker's compensation claim under Illinois law, the situs of the employment relationship between Relco and the Plaintiff.

Subsequently, Plaintiff filed a lawsuit against A.K. Steel in this district, seeking damages for the injuries sustained on its premises. The lawsuit was filed by the Plaintiff *pro se*, who then moved to have Palermo, an Illinois attorney, admitted *pro hac vice*. The case was assigned to United States District Court Judge David L. Bunning.

After almost two years of litigation, A.K. moved for summary judgment, relying upon up-the-ladder doctrine, which shields contractors from liability. In a detailed opinion, Judge Bunning found that the work being performed by Relco could have been performed by A.K., was therefore part of A.K.'s "regular and recurrent" business, and thus, following the up-the-ladder doctrine, A.K. was entitled to worker's compensation immunity and entitled to judgment as a matter of law.

After Judge Bunning's opinion was entered, Palermo notified the Plaintiff that he did not believe that there were sufficient grounds in which to appeal the trial court's decision. He informed Plaintiff in writing that he would not be prosecuting the appeal and further informed him that he should seek a second legal opinion if he so desired. [Docket No. 12-1, Affidavit of Mario Palermo at ¶ 3]. Palermo also advised him of the date that the appeal must be filed before

the order on summary judgment became effective. *Id.*

Adkins did in fact obtain new counsel, his current attorney, Joseph Conley, who sought an appeal of Judge Bunning's decision. However, before the matter was briefed, the parties to the underlying claim entered into a settlement agreement and both the appeal and the underlying trial court claims were dismissed.

Thereafter, Adkins initiated this lawsuit against his former counsel, Palermo, asserting professional negligence. In his single count Complaint, Plaintiff contends that Palermo's negligence led to the dismissal of his Complaint against A.K. Steel. [Docket No. 1, ¶ 13]. Specifically, he alleges Defendant did or failed to do the following acts all of which were the proximate cause of Plaintiff's damages:

> [F]ailing to become conversant with the Kentucky workers' compensation regime and its related doctrine of "up the line" immunity; failing to engage Kentucky counsel conversant with the Kentucky version of workers' compensation immunity, including the associated doctrine of "up the line" immunity; failing to prosecute the Kentucky action in a manner that would have established the inapplicability of the "up the line" immunity defense to a non-employer; failing to adequately prepare a record by testimony, expert opinion, and documentary evidence that would have established the inapplicability of the "up the line" immunity: and failing to file potentially relevant depositions that would have defeated the "up the line" immunity defense.

[Docket No. 1, ¶ 13].

Plaintiff has not retained an expert in anticipation of litigation or preparation for trial in accordance with this Court's Scheduling Order, nor has he sought an extension of time in which to do so.

Defendant seeks summary judgment, arguing that Plaintiff cannot establish the *prima facie* elements of a legal malpractice claim.

3

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). " Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

## III. ANALYSIS

The plaintiff in a legal malpractice case bears the burden of proving three elements:

1) that there was an employment relationship with the defendant/attorney;

2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and

3) that the attorney's negligence was the proximate cause of damage to the client.

4

*Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky.2003) (citations omitted).

The first element is not in dispute. Palermo's dispositive motion is directed at the sufficiency of the evidence presented to prove the second element of failure to exercise the duty of ordinary care. Defendant points out that Plaintiff failed to provide any discovery in this case or provide initial Disclosures as required by the Court. Plaintiff did not file initial disclosures as required by this Court's Scheduling Order and the Federal Rules of Civil Procedure and, further, neglected to respond to a subpoena served upon his counsel on April 14, 2014. Defendant states that despite multiple efforts to obtain materials from Plaintiff relative to his claims in this matter, he has not produced a scintilla of evidence regarding his complaint. Most glaringly absent in Plaintiff's identification of an expert witness.

It is well established that in cases where the alleged malpractice is not blatant to the lay person, Kentucky courts require expert testimony to show a failure to adhere to the applicable standard of care of a reasonably competent practitioner in the same field. *Jarboe v. Harting*, 397 S.W. 2d 775, 777 (Ky., 1965). Expert testimony is required in legal malpractice cases unless "the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it." *Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky.App.2004).

Given the complexity and depth surrounding the underlying litigation against AK Steel and the instant allegations of Palermo's negligence, expert legal testimony is necessary for Plaintiff to prevail. In his Complaint he alleges that an experienced lawyer spending more than two years on the issue was unable to "become conversant" with the up-the-ladder doctrine.

Surely, Plaintiff is not suggesting that that a lay juror would find the doctrine readily apparent. The statute of limitations was not missed; a plea offer was not failed to be conveyed. *See Stephens v. Denison,* 150 S.W.3d at 80. In those cases, the negligence was obvious.

Illustrative of the other end of the spectrum, where expert testimony is needed to establish negligence, is *Burton v. Helmers,* 2009 WL 4-21148 (Ky.App. 2009). In that case, Plaintiff Bobby Burton Burton filed malpractice claims against a succession of attorneys who represented him in a divorce action. He alleged that his counsel committed malpractice in two instances: (1) by failing to move to set aside an agreed order, allegedly executed without Burton's authorization by a prior attorney, which nullified a marital settlement agreement between Burton and his former spouse and (2) by failing either to file a post-judgment qualified domestic relations order (QDRO) or to object to the QDRO submitted by opposing counsel. With respect to the QDRO claim, the trial court ultimately granted appellees' motion for summary judgment as a result of Burton's failure to retain and disclose expert testimony.

The trial court specifically articulated its concerns about a jury's ability to determine whether liability exists, and then to calculate any alleged damages, without the assistance of expert testimony. In particular, the court reasoned that in order to determine whether appellees' action or inaction fell below the requisite standard of care, a jury would need to understand the components of a QDRO and whether appellees' failure to file a QDRO and/or object to components of opposing counsel's QDRO was incorrect or prejudicial to Burton. If a jury did find liability, it would then need to compute the damages allegedly flowing therefrom. The appellate court agreed that an understand of these legal principles was "beyond the ken of a layperson without the assistance of expert testimony." *Huffman v. Baker,* 2006 WL 2846878

6

(Ky.App. 2007).

Similarly, the issue of contractor immunity is not a simple issue for the lay juror to comprehend. The issues in this matter involve in depth interplay of the Federal Rules of Civil Procedure, Kentucky substantive law, Kentucky Revised Statutes as well as administrative regulations and the application of the exclusive remedy provision of the Kentucky Worker's Compensation Act and how these impact litigation strategy.

An expert witness, namely another lawyer, is necessary to explain to the jury the nuances of the law and what "ordinary care" means in that context. It appears Plaintiff **agrees,** by stating in his responsive memorandum that "surely a Kentucky lawyer" would know that Palermo breached a standard of care by failing to address the affirmative defense pled by the defense in the underlying litigation. Indeed.

Expert testimony is indispensable to Plaintiff's case. Without it, his case is nothing more than sour grapes.

Moreover, there are no issues of material fact as to causation. In cases such as this one, in which the alleged malpractice is failing to make a particular argument, proof of causation requries an analysis of whether, had the argument been made, the outcome of the subject litigation would have been different. *See generally Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013). Yet, Plaintiff's specific allegation that that Mr. Palermo failed to become conversant with Kentucky Workers' Compensation regime and its related "up the ladder" immunity, it is not supported by the record. In fact, the final order granting dismissal by summary judgment, Judge Bunning specifically pointed out that many of the arguments made by Mr. Palermo were used by other Kentucky plaintiff attorneys in an attempt to find the "up the ladder" immunity

inapplicable. *See Adkins v. AK Steel*, 0:09-cv-00080-DLB-EBA, Docket No. 64-1, page 14-16. Palermo put forth a colorable argument that ultimately failed due to the current state of Kentucky law and the facts at hand. *Id.*

As for Plaintiff's contention that Palermo did not effectively argue that the "up the ladder" immunity defense was inapplicable and this is tantamount to negligence is similarly without merit. A fair reading of Judge Bunning's opinion reveals that he did not see any alternative but to apply the "up the line" defense. Plaintiff has not alleged overt actions or pointed to specific evidence that shines a light on a credible, alternative reading of the facts that would have resulted in a different outcome in the underlying case.

It is not enough for Adkins to simply suggest that a different outcome would have resulted from a different tactic taken by Palermo. He presents no evidence, testimony or affidavit to establish how any other outcome could have been reached in the underlying case before Judge Bunning or in the pursuit of his present claim for malpractice.

## IV. CONCLUSION

Plaintiff has failed to establish a *prima facie* case of professional negligence. Accordingly, **IT IS HEREBY ORDERED** that Defendant Mario Palermo's Motion for Summary Judgment [Docket No. 12] be **SUSTAINED**.

This 11th day of September, 2014



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge